LOCAL 1064, RWDSU AFL-CIO v ERNST & YOUNG

Docket No. 99445. Argued April 6, 1995 (Calendar No. 16). Decided
    July 25, 1995.

Local 1064, RWDSU AFL-CIO, brought an action in the Wayne
    Circuit Court against Ernst & Young, Rick Hevelhorst, and
    other members of the accounting firm, seeking money damages
    equal to the amount the Michigan Employment Security Com-
    mission assessed the union in increased contribution rates
    because of the defendants' failure to submit required reports
    for 1984 through 1988. The court, Marvin R. Stempien, J.,
    denied the defendants' motion for summary judgment, finding
    that the limitation periods of MCL 600.5805; MSA 27A.5805 do
    not apply because the plaintiff sought damages only for finan-
    cial loss and not for injury to persons or property. The Court of
    Appeals, D. E. HOLBROOK, JR., P.J., and NEFF and J. F.
    KOWALSKI, JJ., affirmed, but disagreed that § 5805 applies
    only to claims of physical injury, and, rejecting the defendants'
    contention that the malpractice limitation period applied, held
    that §§ 5805(8), 5807(8), or 5813 apply, but declined to determine
    which provision was controlling (Docket No. 133880). The de-
    fendants appeal.

In an opinion by Chief Justice BRICKLEY, joined by Justices
    RILEY, MALLETT, and WEAVER, the Supreme Court held:

Because accountants are subject to common-law malpractice
    liability, the two-year limitation period of MCL 600.5805(4);
    MSA 27A.5805(4) applies.

1. Because it was not error for the trial court to conclude
    that this was not a breach of contract action, the Court of
    Appeals erred to the extent that it suggested that the breach of
    contract statute, § 5807(8) might apply.

2. The Court of Appeals correctly held that § 5805 prescribes
    the limitation periods for traditional common-law torts, regard-
    less of whether the damages sought are for pecuniary or
    physical injury.

3. Section 5805(4) provides the relevant period of limitation
    for this accountant malpractice action. Because malpractice is
    not defined by statute, and no Michigan case law has consid-
    ered accounting malpractice, it is appropriate to look to the

common law as evidenced by decisions of other states to discern the scope of common-law malpractice. Courts and commentators, applying common-law tort principles, have recognized accountants as a profession traditionally subject to common-law malpractice liability.

Affirmed in part and reversed in part.

Justice CAVANAGH, joined by Justices LEVIN and BOYLE, dissenting, stated that § 5805(4) applies only to medical and legal malpractice. No Michigan source recognized accountant malpractice actions before 1961, the year the revised Michigan statute of limitations was enacted, and post-1961 sources are entirely irrelevant in determining the intent of the Legislature in enacting the statute. It is for the Legislature to extend the malpractice period of limitation to accountants.

204 Mich App 445; 516 NW2d 492 (1994) affirmed in part and reversed in part.

*Rothe, Mazey & Mazey, P.C.* (by *William Mazey*), for the plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Lawrence G. Campbell* and *Mary Beth Kelly*), and *Ernst & Young* (by *Daniel M. Gray*) for the defendants.

Amicus Curiae:

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani, Mary Massaron Ross,* and *Lawrence R. Donaldson*), for the Michigan Association of Certified Public Accountants.

BRICKLEY, C.J. Plaintiff, Local 1064, RWDSU AFL-CIO, employed defendant accounting firm of Ernst & Young. Ernst & Young provided services for the plaintiff union during fiscal years 1984, 1985, and 1986, after which the firm provided no further services for plaintiff.

In July 1988, plaintiff became aware that one of the union's bookkeepers had not prepared and submitted reports required by the Michigan Em-

ployment Security Commission for 1984 through 1988. As a result, the MESC assessed an increased contribution rate that cost plaintiff in excess of $21,000.

On October 13, 1989, plaintiff filed this lawsuit, seeking money damages from defendants in an amount equal to what the union was required to pay the MESC. Plaintiff alleges that the defendants failed to perform the duties for which they were hired and paid, including examining all plaintiff's records, auditing its accounts, and assuring that all payments required by governmental agencies were properly computed and paid.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7), contending that plaintiff's claim sounded in malpractice and therefore was barred by the two-year limitation period provided by MCL 600.5805(4); MSA 27A.5805(4),[1]

---

[1] Relevant to malpractice, § 5805 of the Revised Judicature Act provides:

(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

* * *

(4) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice. [MCL 600.5805; MSA 27A.5805.]

The date of accrual from which the two-year period begins to run is prescribed by RJA, § 5838(1):

Except as otherwise provided in section 5838a, a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

as well as the six-month discovery rule also applicable to malpractice actions, MCL 600.5838(2); MSA 27A.5838(2).[2]

The trial court denied the motion for summary disposition and held that the relevant limitation period was the six-year period provided by MCL 600.5813; MSA 27A.5813.[3] The trial court concluded that the limitation periods contained in § 5805 do not apply because plaintiff seeks damages only for financial loss and not for injury to persons or property. Defendant appealed.

Although the Court of Appeals disagreed with the trial court that § 5805 applies only when there are claims of physical injury, it agreed that summary disposition was improper. Rejecting defendants' contention that the malpractice limitation period applied, the Court of Appeals held that the applicable period may be found in § 5805(8) (three-year "residual" tort statute),[4] § 5807(8) (six-year

[2] RJA, § 5838(2) provides the following six-month discovery rule for malpractice actions:

Except as otherwise provided in section 5838a, an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. [MCL 600.5838(2); MSA 27A.5838(2).]

[3] RJA, § 5813 provides:

All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes. [MCL 600.5813; MSA 27A.5813.]

[4] RJA, § 5805(8) provides:

The period of limitations is 3 years after the time of death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property. [MCL 600.5805(8); MSA 27A.5805(8).]

breach of contract period),[5] or § 5813 (six-year general statute of limitations).[6] The panel declined to decide which among those three provisions was controlling.[7]

We affirm the decision of the Court of Appeals insofar as it held that § 5805 applies to common-law tort claims even when the alleged damages are solely pecuniary.[8] However, we reverse the decision of the Court of Appeals insofar as it held that an accountant malpractice claim is not governed by the malpractice limitation period provided in § 5805(4).[9]

I

A

Resolution of this appeal initially depends on whether this is a tort action or a breach of contract action. We read the trial court's opinion as rejecting plaintiff's contention that this is an action for breach of contract. By concluding that the applicable limitation period was provided by

---

[5] RJA, § 5807 provides in relevant part:

No person may bring or maintain any action to recover damages or sums due for breach of contract, or to enforce the specific performance of any contract unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.

* * *

(8) The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract.

[6] 204 Mich App 445, 451-452; 516 NW2d 492 (1994).

[7] Id. at 451-452. The panel explained: "[I]t is not necessary that we determine which of those three limitation periods applies because the complaint was brought within three years, the shortest of those periods."

[8] Id. at 448-449.

[9] Id. at 449-451.

§ 5813, the trial court presumably believed that this was not a breach of contract action, otherwise it simply would have concluded that § 5807(8) (breach of contract) provided the controlling limitation period. We find no clear error regarding the trial court's finding that this is not a breach of contract action.[10]

Accordingly, we hold that the statute of limitations for contract actions, § 5807, does not apply to this claim. The Court of Appeals erred to the extent that it suggested that § 5807(8) *might* apply.

B

The next question is whether § 5813, rather than § 5805, controls this case. Section 5813 provides the general period of limitation:

> All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes. [MCL 600.5813; MSA 27A.5813.]

Section 5805 is a more specific statute of limitations than § 5813 and therefore controls if applicable to this action. *Crane v Reeder,* 22 Mich 322, 334 (1871); *Huron Twp v City Disposal Systems, Inc,* 448 Mich 362, 366; 531 NW2d 153 (1995). It provides in relevant part:

> (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to

---

[10] It is well accepted that in ruling on a statute of limitations defense the court may look behind the technical label that plaintiff attaches to a cause of action to the substance of the claim asserted. E.g., *Seebacher v Fitzgerald, Hodgman, Cawthorne & King, PC,* 181 Mich App 642; 449 NW2d 673 (1989); *Barnard v Dilley,* 134 Mich App 375; 350 NW2d 887 (1984).

the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

\*   \*   \*

(4) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice.

\*   \*   \*

(8) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property. [MCL 600.5805; MSA 27A.5805.]

The trial court held that § 5805 does not apply to this cause of action because plaintiff seeks damages only for financial loss and not for physical injury to persons or property. We, like the Court of Appeals, disagree.

For the reasons stated in *Nat'l Sand, Inc v Nagel Construction, Inc,* 182 Mich App 327, 332-337; 451 NW2d 618 (1990), we conclude that § 5805 prescribes the limitation periods for traditional common-law torts, regardless of whether the damages sought are for pecuniary or physical injury. See also *Citizens for Pretrial Justice v Goldfarb,* 415 Mich 255; 327 NW2d 910 (1982). We find it particularly persuasive that § 5805 applies to several causes of action that rarely or never involve physical injury.[11] See *Nat'l Sand, Inc, supra* at 335. While *Nat'l Sand* was decided after the trial court's opinion in this case, we believe that it represents the correct analysis concerning the scope of § 5805.

In light of the case law, we agree that § 5805 controls here.

---

[11] E.g., § 5805(2) (false imprisonment), § 5805(3) (malicious prosecution), and § 5805(7) (libel and slander).

II

Having determined that this action is governed by § 5805, we finally must decide whether the two-year limitation for malpractice actions, § 5805(4), or the three-year period provided by § 5805(8) controls.

In *Sam v Balardo,* 411 Mich 405; 308 NW2d 142 (1981), this Court considered the scope of § 5805(4). After noting that malpractice was not defined by the Revised Judicature Act, the Court thoroughly considered the legislative history of the statute and, consistent with rules of statutory construction, concluded that "the definition of malpractice and liability therefor are to be determined by resort to the common law." *Sam, supra* at 424. We see no compelling basis for retreating from the analytical framework prescribed by *Sam;* principles of stare decisis favor our adherence to it. See *Boyd v W G Wade Shows,* 443 Mich 515, 525; 505 NW2d 544 (1993).[12]

In concluding that accountants are not encompassed within the malpractice statute of limitations, the Court of Appeals found it dispositive that there were no reported Michigan cases of accounting malpractice before 1961. The Court of Appeals analysis is based on a peculiar reading of the phrase: "the common law" as used in *Sam v Balardo, supra.* The phrase "the common law" has been used in different senses. In its most general usage, it means:

[T]hose rules or precepts of law in any country, or that body of its jurisprudence, which is of equal

---

[12] Since *Sam v Balardo, supra,* § 5805 was amended by 1978 PA 495, 1986 PA 178, and 1988 PA 115. We believe those amendments are at least some indication of the Legislature's acquiescence in this Court's construction of § 5805 and therefore support our adherence to the statutory analysis offered by *Sam.* See *Dean v Chrysler Corp,* 434 Mich 655, 664; 455 NW2d 699 (1990).

application in all places, as distinguished from local laws and rules. [15A CJS, Common Law, § 1, p 41.]

As distinguished from legislative enactments, the common law refers to:

> "[T]he embodiment of principles and rules inspired by natural reason, an innate sense of justice, and the dictates of convenience, and voluntarily adopted by men for their government in social relations. The authority of its rules does not depend on positive legislative enactment, but on general reception and usage, and the tendency of the rules to accomplish the ends of justice." [*Garwols v Bankers Trust Co*, 251 Mich 420, 423-424; 232 NW 239 (1930).][13]

If Michigan case law were our sole guide to the common law, the common law would cease to embody general precepts of universal import that are derived from reason, custom, and usage and be reduced instead to the mere rule of decision in a particular case. We simply do not believe that *Sam v Balardo, supra* envisioned that the common law would occupy such superficial status in our jurisprudence. Thus, while Michigan case law is certainly relevant to determining whether a particular profession is subject to malpractice under the common law, the traditional nature and origin of the common law make it clear that a consideration of judicial decisions from other jurisdictions is not prohibited here.[14]

---

[13] See also 15A CJS, Common Law, § 1, p 41.

[14] See also 15A CJS, Common Law, § 21, pp 78-79 explaining:

In determining what the common law is, the courts will consider as evidence, although not as conclusive, textbooks, commentaries and other standard works on the subject. Judicial decisions also constitute evidence of what the common law

Construing the instant statute by reference to the common law, as it is explained by other state decisions, is not a novel concept. In *Kambas v St Joseph's Mercy Hosp of Detroit,* 389 Mich 249; 205 NW2d 431 (1973), the Court considered the statute at issue here and held that nurses were not encompassed within the two-year malpractice period. The Court looked to the common law as explained by the Ohio Supreme Court and concluded that because nurses were not traditionally subject to malpractice liability, they are not encompassed by the two-year statute of limitation. *Id.* at 255, quoting *Richardson v Doe,* 176 Ohio St 370; 199 NE2d 878 (1964). Thus, even before *Sam,* this Court recognized that the decisions of other states may play a role in ascertaining the scope of the statute at issue.

In *Dennis v Robbins Funeral Home,* 428 Mich 698; 411 NW2d 156 (1987), the Court followed the analytical framework prescribed by *Sam* and held that funeral directors were not encompassed by the malpractice statute of limitation. There was no suggestion that funeral directors were subject to malpractice liability under the common law as represented by decisions of other states, treatises, hornbooks, or encyclopedias. Indeed, the Court expressly noted:

> Since there was no common-law cause of action for funeral director or funeral home malpractice, we find no indication that the Legislature intended

---

is, and accordingly, decisions of the courts of the states, even though contrary to English decisions, may properly be consulted.

Of course, where Michigan has expressly rejected or modified a common-law doctrine, reference to decisions of other states applying the common law would be improper. In the context of malpractice liability, however, Michigan's law appears consistent with the common law.

to include such action within the meaning of
malpractice as it is used in MCL 600.5805(4); MSA
27A.5805(4). [*Id.* at 702.]

The absence of a common-law cause of action, in
conjunction with the absence of any decisions on
point from this jurisdiction, justified the *Dennis*
Court's conclusion that funeral directors were not
protected by the two-year malpractice statute of
limitation.

To read our prior decisions construing the mal-
practice statute of limitation as somehow prohibit-
ing courts from looking beyond the Michigan ap-
pellate reports when determining whether a par-
ticular profession was subject to common-law mal-
practice is unprecedented, and contrary to the
traditional role of "the common law" in shaping
our jurisprudence. In the absence of a published
opinion in this state, it is entirely appropriate and
indeed necessary to look to the common law as
represented by other states' decisions, hornbooks,
treatises, and journals to discern the scope of
common-law malpractice. To hold otherwise would
impose an arbitrary limit on § 5805(4).

When one looks beyond Michigan's appellate
reports, it is clear that accountants have been
subjected to common-law malpractice liability with
increasing frequency since at least the mid-1900s.
See, e.g., *Atkins v Crosland,* 406 SW2d 263, 264
(Tex Civ App, 1966), rev'd on other grounds 417
SW2d 150 (Tex, 1967); *Bancroft v Indemnity Ins Co
of North America,* 203 F Supp 49 (WD La, 1962),
aff'd 309 F2d 959 (CA 5, 1962); *Carr v Lipshie,* 8
AD2d 330; 187 NYS2d 564 (1961); *Cochrane v
American Surety Co of New York,* 108 So 2d 315
(Fla App, 1959); *Duro Sportswear, Inc v Cogen,* 131
NYS2d 20 (NY S Ct, 1954); *Feldman v Granger,*
255 Md 288; 257 A2d 421 (1969); *L B Laboratories,*

*Inc v Mitchell,* 39 Cal 2d 56, 60-63; 244 P2d 385 (1952); *Professional Rodeo Cowboys Ass'n v Wilch, Smith & Brock,* 42 Colo App 30; 589 P2d 510 (1978); *Ronaldson v Moss Watkins, Inc,* 127 So 467, 470 (La App, 1930); *Wilmington Country Club v Horwath & Horwath,* 46 FRD 65 (ED Pa, 1969); Hawkins, *Professional negligence liability of accountants,* 12 Vand L R 797 (1959); 1 Am Jur 2d, Accountant, § 15-19, pp 365-368 (discussing common-law liability of accountants). Courts and commentators recognizing liability for the malpractice of an accountant have not created a new cause of action, but merely have applied the common-law principles articulated in malpractice actions generally.

That accounting is a profession traditionally subject to common-law malpractice liability is not a remarkable proposition. In fact, the Legislature has recognized the practice of accounting since 1925, when it enacted a statute to regulate the work of public accountants. 1925 PA 353. Consequently, we hold that the relevant statute of limitations is MCL 600.5805(4); MSA 27A.5805(4).

Because it is clear that accountants were, and, are subject to common-law malpractice liability, it is unnecessary in this case to conclusively construe the precise scope of MCL 600.5805(4); MSA 27A.5805(4), or to decide whether the malpractice statute of limitations applies to actions against members of *all* state licensed professions. We so limit our holding.

Affirmed in part and reversed in part.

RILEY, MALLETT, and WEAVER, JJ., concurred with BRICKLEY, C.J.

CAVANAGH, J. (*dissenting*). The issue here is whether an accountant may assert the malpractice

period of limitation as an affirmative defense to liability. The majority holds that if someone, somehow, sometime, somewhere, and in some source, labeled an action against a member of the same occupation as defendant a "malpractice" claim, then the two-year malpractice period of limitation will apply. Statutes of limitation are premised on the idea that there should be a bright-line cut-off date to potential litigation. I dissent because I believe that the majority's holding unnecessarily confuses and obscures the rules of litigation in the State of Michigan.

At issue here is the meaning of MCL 600.5805(4); MSA 27A.5805(4), which provides: "Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice." This provision was one small section in the Revised Judicature Act of 1961.[1] The Judicature Act of 1915 provided a two-year malpractice period of limitation for physicians, surgeons, and dentists. 1915 CL 12323(3). Because the 1961 provision deleted the physician, surgeon, and dentist language, Michigan courts have struggled with whether the malpractice period of limitation applies to other professions.

In *Kambas v St Joseph's Mercy Hosp of Detroit,* 389 Mich 249, 253; 205 NW2d 431 (1973), the defendant hospital, relying on MCL 600.2912; MSA 27A.2912, another provision of the Revised Judicature Act of 1961, asserted that nursing was a licensed profession that was protected by the malpractice period of limitation. Section 2912(1) provides:

A civil action for malpractice may be main-

---

[1] For a more thorough discussion of the legislative history, see my dissenting opinion in *Sam v Balardo,* 85 Mich App 20, 25-27; 270 NW2d 522 (1978).

tained against any person professing or holding himself out to be a member of a state licensed profession. The rules of the common law applicable to actions against members of a state licensed profession, for malpractice, are applicable against any person who holds himself out to be a member of a state licensed profession.

*Kambas* specifically rejected the argument that § 2912 created any new cause of action. *Id.* at 253. The Court relied on the explicit Committee Comment from the drafters of the statute:

"The source section pertained only to physicians and surgeons. *Note that the broadening of this section does not create a new cause of action.* Members of state licensed professions are liable for malpractice at common law, as are unlicensed persons. What this section does is hold the unlicensed person to the standard of care to which a member of the state licensed profession would be held, instead of to the standard of care of a layman, to which unlicensed persons are held at present." [*Id.,* quoting Committee Comment accompanying § 2912 (emphasis added in *Kambas*).]

The Court held that § 2912 merely extended the malpractice cause of action to pseudoprofessionals serving in professions that were already subject to malpractice actions. *Id. Kambas* concluded that because nurses were not subject to malpractice actions under the Judicature Act of 1915, the Legislature did not intend that nurses could fall within the malpractice period of limitation. We should recognize that the Legislature subsequently amended related statutes and current legislation provides that medical malpractice actions extend to licensed health care professionals who are licensed or registered under article 15 of the Public

Health Code,[2] and licensed health care facilities or agencies who are licensed under article 17 of the Public Health Code. MCL 600.5838a; MSA 27A.5838a. The statute expressly excludes sanitarians and veterinarians. § 5838a(1)(b).

Another factor for consideration has been a Committee Comment that the drafters of the 1961 statute submitted with § 5805: "Section [5805] is a compilation of the limitations on the general tort remedies. Existing time periods have been used."[3] I relied on this comment in my dissenting opinion in *Sam v Balardo,* 85 Mich App 20, 29-30; 270 NW2d 522 (1978), a legal malpractice case, in which I concluded that the Legislature intended to limit the malpractice period of limitation to physicians, surgeons, and dentists. However, on appeal, the majority of this Court held that the analysis should focus on the definition of malpractice by resort to the common law. *Sam v Balardo,* 411 Mich 405, 424; 308 NW2d 142 (1981).

Dissenting, Justice LEVIN astutely predicted that this holding would leave litigation rules uncertain:

> The majority's construction has the effect of rendering uncertain the period of limitation applicable to any given profession. After today, only members of the legal and medical professions (including nurses) can know with confidence which period applies until a court, and probably not until this Court, has searched reported decisions, treatises and statutes relating to actions for the negligent practice of that profession to ascertain whether the word "malpractice" has been used with regard to it with sufficient frequency for the Court to conclude that such an action was consid-

[2] Article 15 applies to chiropractic, dentistry, medicine, nursing, optometry, osteopathic medicine and surgery, pharmacy practice, physical therapy, podiatric medicine and surgery, counseling, psychology, occupational therapy, sanitarians, and veterinary occupations.

[3] Reprinted as an annotation to § 5805.

ered a "malpractice" action at common law. [*Id.* at 440.][4]

The majority states that it is necessary to research all available sources in order "to discern the scope of common-law malpractice." BRICKLEY, C.J., *ante* at 332. The majority reasons that "[t]o hold otherwise would impose an arbitrary limit on" the malpractice period of limitation. *Id.*[5] This analysis is in conflict with this Court's most recent approach in *Dennis v Robbins Funeral Home,* 428 Mich 698; 411 NW2d 156 (1987), in which we held that funeral homes and their directors could not use the shorter malpractice period of limitation. *Dennis* specifically looked only to Michigan cases. *Id.* at 702, n 1. We stated:

---

[4] Justice LEVIN argued:

> If there is a difference between malpractice actions and ordinary negligence actions it is that, since the former involves negligence in the practice of a profession, the applicable standard of care is that of a reasonable member of the profession rather than of a reasonable layman. If the Court's construction has the effect of extending the malpractice limitation period to all professionals of whom a higher standard of care is required, then it will be difficult to explain why the Revised Judicature Act of 1961 did not extend the malpractice limitation period to all state-licensed professionals.
>
> If the shorter malpractice limitation period applies to all state-licensed professions, then it applies not only to physicians and lawyers but also, for example, to taxidermists, foresters, surveyors, contractors, landscape architects and community planners. If that is to be the course of adjudication of § 5805(3) [now 5805(4)], *Kambas* should be openly overruled. Otherwise, nothing will be left of the *Kambas* decision save that nurses, alone among state-licensed professionals, will be denied the benefit of the shorter malpractice limitation period. [411 Mich 442.]

[5] I would counter that statutes of limitation are, by their very nature and purpose, arbitrary. For example, the Legislature has decided that a normal breach of contract action must be commenced within six years. MCL 600.5807(8); MSA 27A.5807(8). Therefore, six years and two weeks is too late. The Legislature draws the lines, it is not our place to alter them.

Since a malpractice action against a funeral home or funeral director was not recognized at the time the Legislature enacted the Judicature Act of 1915 and the Revised Judicature Act of 1961, as amended, we find no indication that the Legislature intended to include this cause of action within the meaning of the malpractice statute of limitations. [*Id.* at 703.]

Now, in contrast to the majority's approach in *Sam,* and in contrast to the unanimous opinion in *Dennis,* this Court will apparently consider sources *after* 1961, the date that the revised Michigan statute of limitations was enacted. BRICKLEY, C.J., *ante* at 332-333. I believe that post-1961 sources are entirely irrelevant in determining the Legislature's intent when it enacted this statute.

Statutes of limitation are rules that govern litigation and are intended to establish predictability and certainty for lawyers, judges, and clients. In contrast, the majority's approach seems to leave no limit with regard to who can fit into the shorter malpractice statute, and, therefore, the majority has shaken predictable rules and left them totally uncertain. After today, no lawyer can safely advise a client that a claim is actionable, or that it is barred, unless the defendant is a health care professional, lawyer, architect, engineer, land surveyor, contractor, or accountant. No judge can confidently rule on a statute of limitations motion involving another profession without researching every printed source available from any and all jurisdictions. This goes far beyond *Kambas, Sam,* and *Dennis.* Even if we accept the *Sam* majority's approach, the scope of our inquiry is limited to what the Michigan Legislature intended in 1961, as evidenced by Michigan law under the Judicature Act of 1915.

I believe the correct approach to a statute of

limitations issue has been demonstrated by 1988 PA 115. In *Marysville v Pate, Hirn & Bogue, Inc,* 154 Mich App 655, 661; 397 NW2d 859 (1986), the panel affirmed the application of the malpractice period of limitation to a claim against a professional engineering firm. The Legislature responded by enacting § 5805(10), which provides: "The period of limitations for an action against a state licensed architect, professional engineer, land surveyor, or contractor based on an improvement to real property shall be as provided in section 5839."[6] See Senate Fiscal Analysis, SB 478 (Second Analysis), June 22, 1988. The *Legislature* expressed its intent that the *malpractice* period of limitation does not apply to these particular licensed professionals.[7]

I would maintain that the Legislature can readily extend the malpractice period of limitation to professions that were not recognized as being subject to malpractice actions by Michigan law in 1961, as it has done with respect to health care professionals and as it expressly has not done with respect to architects, engineers, land surveyors, and contractors. Therefore, we should end our consideration of this issue here. We would then have bright-line rules that all litigants and courts can follow. Otherwise, we will continuously face this issue each time a different profession asserts the malpractice period of limitation as a defense, as foretold by Justice LEVIN. *Sam, supra* at 441. Such uncertainty belies the purpose of the statute of limitations.

Therefore, I would hold that § 5805(4) applies

---

[6] Section 5839 generally provides a six-year limitation, a one-year discovery rule exception, and a ten-year ultimate limitation for all actions.

[7] Therefore, I disagree with the majority's assertion that the Legislature has acquiesced to having the courts pick and choose which professions are covered and which are not.

only to medical and legal malpractice. If other professional groups want the protection of a shorter period of limitation they should contact members of the Legislature. It is not our place to create new malpractice causes of action when the Legislature has expressly stated that it has not. Barring such an approach, I believe that our inquiry must remain whether *Michigan* recognized a malpractice action against this profession in 1961. Because there is no Michigan source recognizing an accountant malpractice action before 1961, I would affirm the decision of the Court of Appeals.[8]

LEVIN and BOYLE, JJ., concurred with CAVANAGH, J.

[8] The panel held that the two-year malpractice period of limitation did not apply. It further found it unnecessary to determine which period did apply because the complaint was filed within the shortest of the alternative periods. 204 Mich App 451-452.